UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-1-19

---------------------------------------------------------X

ROMERO RIVERA, *et al.*,

        *Plaintiffs,*

  *-against-*

        18. Civ. 4427 (PAC)

SILVER STAR CLEANERS, INC., *et al.*,

        **OPINION & ORDER**

        *Defendants.*

---------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

## BACKGROUND

Plaintiff Romero Rivera is a former employee of Silver Star Cleaners, Inc., owned by Hyung Nam Jo, Mee S Lim, Han S Kim, Ok Im Kim, and Michelle Doe (collectively, "Defendants"). Complaint, Dkt. 1, ¶ 1. Defendants own and operate a dry-cleaning service at 243 West 72nd Street, New York, New York 10023 under the name "Silverstar Cleaners." *Id.* ¶ 2.

Plaintiff was employed as a general dry-cleaning worker at Silverstar Cleaners and alleges Defendants required her and other employees to work in excess of forty hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations. *Id.* ¶ 10. Plaintiff also alleges Defendants violated the wage statement and notice and record-keeping provisions of New York Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"). *Id.* ¶¶ 96-101. Rivera brings this action on behalf of herself and others similarly situated for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the NYLL, including applicable liquidated damages, interest, attorneys' fees and costs.

The parties have now resolved their dispute, and seek approval of their settlement agreement and letter, jointly filed on July 3, 2019. Dkt. 45. Generally, the agreement is appropriate, but the Court cannot approve it in its present form.

## DISCUSSION

### I. Legal Standard

"To promote FLSA's purpose of ensuring 'a fair day's pay for a fair day's work,' a settlement in a FLSA case must be approved by a court or the Department of Labor." *Hyun v. Ippudo USA Holdings*, NO. 14-CV-8706 (AJN), 2016 WL 1222347, at *1 (S.D.N.Y. Mar. 24, 2016) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)).[1] A district court "must scrutinize the settlement agreement to determine that the settlement is fair and reasonable" before the court enters a judgment approving an FLSA settlement." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

In making a determination, courts look to several factors including: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Id.* (internal citations and quotation marks omitted).

### II. Analysis

#### A. Proposed Settlement Sum

The proposed settlement agreement, Dkt. 45 (the "Agreement"), holds Defendants

---

[1] The Second Circuit has not expressly held that such approval is required where the parties stipulate to a dismissal of an action *without* prejudice. *See Zackery v. Rondinone Studio LLC*, No. 19-CV-1191 (RA), 2019 WL 3006405, at *2 (S.D.N.Y. July 10, 2019) (citing *Cheeks*, 796 F.3d at 201 n.2).

2

responsible for monetary payments to Rivera in the gross sum of $24,000.00. Agreement at 1-2. Defendants further agree to enter a Judgment on consent in the amount of $91,000.00. *Id.* Pursuant to Plaintiff's retainer agreement with counsel, one-third of the total $24,000 payment (or $8,160.00) will go to Plaintiff's attorney. Dkt. 45-1 at 1. The remaining two-thirds (or $15,840.00) will go to Plaintiff Rivera herself as a full and complete settlement and final satisfaction of Plaintiff's claims and potential claims against Defendants. *Id.*

Plaintiff estimates that if she had recovered in full for her claims, exclusive of attorney's fees, she would be entitled to approximately $91,148.00. Dkt. 45-1 at 1-2. The proposed settlement sum is 26.3% of Plaintiff's original estimated recovery (($24,000.00 / $91,148.00) x 100 = 26.3%). This amount is reflective of the risks associated with continued litigation and the possibility of proceeding to trial, a very real likelihood on the facts of this case. This is supported by the procedural history. Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiff's claims. Most significantly, Defendants "vigorously contested the alleged hours worked by the Plaintiff, duties of the Plaintiff, and the method of Plaintiff's pay." Dkt. 45-1 at 2.[2] Furthermore, the proposed settlement was negotiated at arm's-length between competent attorneys experienced in the practice area of wage-and-hour litigation, lessening concerns of fraud or collusion between the parties. *See Santos v. Yellowstone Props.*, No. 15 Civ. 3986 (PAE), 2016 U.S. Dist. LEXIS 61994, at *7 (S.D.N.Y. May 10, 2016).

Because the Court is "generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement, there is a 'strong presumption in favor of finding a settlement fair.'" *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013)

---

[2] "For example, Plaintiff alleged she was paid a fixed salary and did not track her time period prior to 2017, but Defendants produced detailed employment records calling these assertions into question." *Id.*

3

(internal citations omitted); *Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be proposed."); *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."). In light of facts and circumstances described above, the Court finds the proposed settlement sum to be both fair and reasonable.

### B. Plaintiff's Attorney's Fees

Plaintiff's counsel asks this Court to approve attorney's fees in the amount of $8,160.00, or one-third of the total $24,000.00 settlement amount. The Second Circuit has routinely held that a one-third compensation structure is reasonable. *See, e.g., Garcia v. Atlantico Bakery Corp.*, No 13 Civ. 1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage on FLSA cases."); *see also Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014) ("Class Counsel's attorneys' fees request of one-third (33.33%) is in line with decisions in this Circuit which have routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases.").

Plaintiff, however, failed to submit billing records, therefore stripping the Court of any meaningful method to evaluate the reasonableness of the hours, rates, and performance of Plaintiff's counsel. *See Martinez v. SJG Foods LLC*, No. 16-CV-7890 (RA), 2017 WL 2169234, at *3 (S.D.N.Y. May 16, 2017) ("As [counsels] did not ... submit contemporaneous billing

records documenting, for each attorney, the hours expended and the nature of the work done, the Court does not have sufficient information to determine if the requested fee amount is fair and reasonable."); *Arango v. Scotts Co., LLC*, No 17-CV-7174 (KMK), 2019 WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) ("Even where attorney's fees are sought pursuant to the percentage of the fund method, counsel must submit evidence providing a factual basis for the award.").

In order for the Court to approve attorney's fees, counsel must provide accurate documentation reflecting the billing hours spent representing Plaintiff in this action. Until proper documentation is provided, the Court declines to approve the settlement.

## C. The Release and Covenant Not to Sue Language Is Too Broad to be Fair and Reasonable

The Agreement's language pertaining to the release and covenant not to sue is too broad to constitute a "fair and reasonable" settlement of the claims. The current release bars Plaintiff from bringing any type of claim against Defendants so long as it arises from conduct that occurred prior to the Agreement's Effective Date, notwithstanding its relevance to the claims in this litigation. *See* Agreement ¶ 4.[3] "Courts typically reject such broad releases. In this Circuit,

---

[3] The provision reads: "Plaintiff hereby irrevocably and unconditionally releases and forever discharges Defendants ... from any and all charges, complaints, claims, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected ... which the Plaintiff at any time has, had or claimed to have against Defendants relating to their employment with Defendants and regarding events that have occurred as of the Effective Date of this Agreement, including, without limitation, any and all claims related or in any manner incidental to the Litigation, such Plaintiff's employment or termination, or any liability under any contract, tort, federal, state or local fair employment practices or civil rights or any other law, including, but not limited to, the New York State Human Rights Law, New York City Human Rights Law, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, COBRA, the Family and Medical Leave Act, the Fair Labor Standards Act, New York State Labor Law, New York City Labor Law, or any and all common law claims, including claims for wrongful discharge, breach of express or implied contract, breach of implied covenant of good faith and fair dealing, violation of public policy, defamation or misrepresentation, or any claim for attorney's fees, physical or emotional distress or injuries, punitive damages, compensatory damages, or any other duty or obligation of any kind or description whether arising in law or equity, except that nothing in this Agreement shall operate to preclude Plaintiff from enforcing, or shall adversely affect their rights or abilities to enforce this Agreement." Dkt. 45, at ¶ 4.

class action releases 'may include claims not presented and even those which could not have been presented,' but only when 'the released conduct arises out of the identical factual predicate as the settled conduct.'" *Lopez*, 96 F.Supp.3d at 181 (citing *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir.2005)); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2014 WL 6958633, at *4 (S.D.N.Y. Dec. 11, 2014) ("When courts have an obligation to scrutinize settlement agreements, they typically reject such broad releases.").

When presented with a FLSA case, the Court "has an obligation to police unequal bargaining power between employees and employers, [and] such broad releases are doubly problematic." *Camacho*, 2014 WL 6958633, at *4. As one federal court noted:

> "An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim.... Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim ... to leverage a release from liability unconnected to the FLSA."

*Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D.Fla.2010).

The release in the Agreement is too broad to approve. The parties are instructed to narrow the proposed language of the release provision to solely include claims for "conduct that arises out of the identical factual predicate as the settled conduct." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir.2005).

### D. Confidentiality Clause

Paragraph 13 of the Agreement refers to the agreement as a "Confidential Settlement Agreement and General Release." "[A] non-disclosure agreement in an FLSA settlement, even when the settlement papers are public[ly] available on the Court's docket, is 'contrary to well-established public policy' because it inhibits one of the FLSA's primary goals—to ensure 'that

6

all workers are aware of their rights.'" *Camacho*, 2015 WL 129723, at *2 (quoting *Guareno v. Vincent Perito, Inc.*, No. 14 Civ. 1635 (WHP), 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014). To the extent this reference to confidentiality was purposely included, it must be stricken.

### E. Judgment on Consent

The Court also declines to approve the judgment on consent, attached as "Exhibit A" to the proposed settlement agreement. By entering into the Agreement, Plaintiff Rivera is provided with a legal remedy to ensure payment of the proposed settlement sum. The Agreement is an enforceable contract, and as such, the judgment on consent is an unnecessary, duplicative measure taken by the parties to ensure payment of the proposed settlement sum.

Furthermore, the judgment would erroneously entitle Plaintiff Rivera to $91,000.00 when, in fact, she is only entitled to the proposed settlement sum of $24,000.00. Accordingly, the judgment on consent must be stricken from the Agreement.

## CONCLUSION

For the reasons stated, the attorney's fees, release and covenant not to sue clause, confidentiality provision of the Agreement, and the judgment on consent are objectionable. The request to approve the proposed Agreement is denied without prejudice; but will be approved upon the submission and review of the appropriate billing records, the deletion of the reference to confidentiality, modification of the release and covenant not to sue, and removal of the judgment on consent. The parties are further instructed to publicly file Plaintiff's damages chart, referenced as Exhibit B in their submission but never publicly filed.

Dated: New York, New York
August 7, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge